IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JOHN N. ("JACK") HEARN, CHRISTOPHER
O. BARTLETT, JOHN ROUSSELLE,
TIMOTHY HARKINS, AND HENRY P. MALLON

Plaintiffs,

CIVIL ACTION NO. 07-60209
MARTINEZ/GARBER

MICHAEL MCKAY, ROBERT MCKAY
THOMAS BETHEL, EDWARD KELLY,
DONALD NILSSON, PAUL CATES,
DANIEL SMITH, JOHN HAFNER,
DONALD CREE, JOSEPH GREMELSBACKER,
AND ROBERT KEIFER, INDIVIDUALLY
AND AS OFFICERS OF THE AMERICAN
MARITIME OFFICERS UNION, AND THE
AMERICAN MARITIME OFFICERS UNION,

**PLAINTIFFS' OPPOSITION
TO DEFENDANT'S
MOTION FOR PROTECTIVE
ORDER**

Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiffs John N. ("Jack") Hearn, et al., by and through undersigned counsel, submit this memorandum in opposition to Defendants' Motion for a protective order. As we show below, Defendants' instant Motion is legally and factually baseless and, given the impending discovery cutoff of January 3, 2008, serves as fresh evidence that Defendants' dilatory conduct rises to the level of bad faith.

### Factual Background

While the facts relevant to Plaintiffs' Opposition are set forth in greater detail in Plaintiffs' Motion to Compel Production of Documents (Record, 71) and

Response to Defendants' Opposition to that motion (Record, 81) the following material facts remain undisputed:

1. On August 15, 2007, Plaintiffs served their first Request for Production of Documents on the AMO Union and the individual Defendants. The requests sought documents directly relating to the three (3) counts Complaint, i.e. documentation relating to certain financial transactions of the AMO, the purported "amendment" to Article 3 of the AMO Constitution, and the publication of articles in the Union's newsletter critical of Union members. Pl. Mot., Exh. 1 and 2.[1]

Plaintiffs' also sought discovery as to whether the AMO is paying for the defense of the Defendant Officers, and documents prepared by counsel on behalf of the AMO or the AMO Plans, retainer agreements and billing records. Pl. Mot. Attach. 1 & 2.

2. Defendants' Responses were initially due September 19, however Plaintiffs and Defendants agreed a ten (10) day extension of time, making Defendants' responses due on October 1. Pl. Mot. Attach. 4.

3. On October 1, the individual Defendant/Officers provided a combined response (Pl. Mot., Attach. 1), and Defendant AMO provided a separate response (Pl. Mot., Attach. 2). However, no documents were produced at that time, despite that the responses for the AMO and the Defendant/Officers indicated that documents would be made available for inspection and copying

---

[1] Exhibits cited to in this Memorandum that have already been appended to Plaintiffs' Motion to Compel are cited to as Pl. Mot. Attach. ___, and the Exhibits cited to in this Memorandum that have already been appended to Plaintiffs' Response to Defendant's Opposition to that motion are cited to as Pl. Resp. Attach. ___.

pursuant to Fed. R. Civ. Pro. Rule 34. Id. A privilege log was not produced, nor was a motion for a protective order filed by *any* Defendant.

4. Instead, Defendants embarked on the following course of conduct designed to thwart Plaintiffs' ability to discover the extent of the unlawful activities of the Defendant/Officers by taking as much time off the discovery clock as possible before providing Plaintiffs with *any* responsive documents:

- On October 1, Defendants demanded that Plaintiffs sign a "confidentiality agreement" before agreeing to produce *a single* document. Defendants did not explain what documents they had in their possession that they claimed were "confidential" in nature, did not set forth the legal basis supporting their claim and did not provide a proposed confidentiality agreement with their responses. Pl. Mot. Attach. 1 and 2. In short, no documents were actually produced, and as later became obvious, none were even ready to be produced.

- By letter dated October 23, and only after Plaintiffs' Motion to Compel was filed, Defendant provided their *first* proposed "confidentiality agreement" to Plaintiffs, which provided Defendants with *unlimited* authority to unilaterally designate discovery material as "confidential." Exhibit B.[2] We predictably rejected this proposal. Pl. Resp. Attach. C.

---

[2] Defendants' letter unilaterally declared that Plaintiffs could not inspect any documents until the week of *November 26* at the AMO Headquarters in Dania Beach (nearly *two months* after the already extended production deadline of October 1, asserting that the additional delay was necessary to, *inter alia*, permit all of AMO's counsel to "coordinate," to accommodate the AMO staff members attending Union meetings in New York, and because Plaintiffs request encompassed "approximately 500,000" documents. Id. This does not explain how any of these newly-minted "reasons" for delaying the production of

3

- On October 25, Defendants' counsel confirmed that *no documents* were available for production that day regardless of any confidentiality concerns, but that he had a call in to the AMO to see whether any documents could be made available later that day or the next day. Pl. Resp. Attach. D. Defendants' counsel then indicated that the confidentiality issues the AMO was concerned with were limited to copyrighted material such as AMO training manuals, and personal information such as medical records and social security numbers. Id. Counsel for Plaintiffs indicated that based on that representation, agreement might be possible, and asked that an agreement to that effect be reduced to writing for Plaintiffs' consideration. Based on that conversation, and in the false hope of informally resolving this discovery issue, Plaintiffs agreed to Defense counsel's request to extend the deadline to respond to the Motion to Compel by four (4) business days, to and including Friday November 2. Id.

- On November 1, Defendants obfuscation crystallized when Counsel for Defendants forwarded a revised proposed "confidentiality agreement" (Attach. E) that, contrary to the express representations of Defendants' counsel five (5) days earlier, contained a *broad* prohibition on disclosure of *any* discovery documents. Plaintiffs' counsel rejected this "bait and switch" tactic, and declined any further discussion of any "confidentiality agreement" as futile and, at this point, dilatory. Pl. Resp. Attach. F.

- On November 6, thirty-five (35) days after documents were due to be produced and after their "confidential" objections were lodged in response to

---

documents from *the AMO* applies to the requests served on the individual Defendant/Officers. Id.

4

Plaintiffs' Requests, Defendants' counsel *again* wrote to Plaintiffs' counsel, admitting that they were still reviewing documents to determine *whether* any privileged or "confidential" information was contained therein, and informing Plaintiffs, again for the first time, that they would not be disclosing the "legal opinions, invoices from this case, and retainer agreements…" without a "court order." Pl. Resp. Attach. G.[3]

- On November 8, Plaintiffs' counsel responded, notifying defense counsel that Plaintiffs' positions on the confidentiality agreement did not change, and reminding defense counsel that in March, Plaintiffs notified Defendants that Union counsel's communications with the Union were excepted from attorney-client privilege under the fiduciary-benefit exception, and also that retainer agreements and billing records were *not* legally privileged. Exhibit B.

- On November 16, forty-five days after the extended production deadline passed (and ninety (90) days after Defendants' received Plaintiffs discovery requests), Defendants filed the instant Motion for Protective Order, collectively on behalf of both the Union and the Individual Defendant/Officers.

**ARGUMENT**

Defendants' motion is baseless and is brought in bad faith. The record confirms that Defendants were well aware no later than August 16 of *all* the concerns raised in their motion. Accordingly, this pleading is yet another unfortunate stall purposely designed to severely limit Plaintiffs' ability to *timely*

---

[3] The retainer agreement and invoices are relevant to the question of whether the Union Officer/Defendants are continuing to unlawfully expend Union funds to underwrite their defenses in this case. Pl. Mot. to Disqualify Counsel and Restrain Expenditure of Union Funds, Record #36, pp. 6-9.

access critical documentation needed to thoroughly prepare for depositions, any expert disclosures, and ultimately, trial.[4] Defendants' motion must be denied, and Plaintiffs awarded their fees and costs in this continuing circus of having to extract basic discovery. F.R.C.P. Rule 37(a)(4).

I.   This Motion is Untimely.

Defendants filed this discovery motion over ninety (90) days after they received Plaintiffs' request for production of documents, well outside Local Rule 26.1H's requirement that all discovery motions

> "shall be filed within thirty (30) days of the occurrence of grounds for the motion. Failure to file discovery motion within thirty (30) days, absent a showing of reasonable cause for later filing, may constitute a waiver of the relief sought."

Here, Defendants received Plaintiffs' Document Requests on August 16, 2007. As the Document Requests themselves were clearly drafted, Defendants were placed squarely on notice of *all* of the issues raised in their instant Motion and thus knew (or should have known) the need for a protective order on that date.

If Defendants were *truly* concerned with protecting the Union's institutional interests instead of delaying discovery, this Motion would have been brought *months* ago. Instead, Defendants attempt to whitewash over their tardiness by speciously arguing that the thirty-day period did not begin to run until early November, due to Defendants' admitted *failure to adequately review responsive documents*. Def's Mot. ¶6. Defendants' interpretation of this rule is untenable,

---

[4] Indeed, Plaintiffs intend to file a motion *in limine* to preclude Defendants from relying on *any* documents at trial that they had in their possession as of June 21, 2007, other than the four (4) documents and the AMO Constitution provided by Defendants in their disclosures to the Court's May 31, 2007 Order directing Parties to exchange trial exhibits in their custody by that date. Record #42, ¶4.

6

and would unfairly permit parties to unilaterally delay resolution of a discovery dispute until such a time that strategically benefits that party. Accordingly, the Court should deny Defendants' Motion -- in its entirety -- as untimely filed, and further conclude that the Defendants' arguments therein have correspondingly been waived.

II. <u>Defendants' General Assertions of Confidentiality, Privilege and Work Product Doctrine Have Not Been Raised in a Timely Manner, are Procedurally Inadequate and Have been Waived as Well.</u>

Defendants' attorney-cleint privilege and work product assertions with respect to Paragraphs 27, 28, 29, 30, 31, and 34 of the AMO Request, and to Paragraphs 2 and 3 of the individual Officer/Defendant Requests were not timely raised under FRCP Rule 26(b)(5) and/or Local Rule 26.1(G)(3) and are likewise waived. Defendants *to this day* have not supported *any* of their privilege or work-product claims with the particular, specific statements and identification of documents required by F.R.C.P. Rule 26(B)(5) and Local Rule 26.1(G)(3), to permit the Plaintiffs (or the Court) to intelligently asses the merits of the claims, and no privilege log has been provided even with their belated motion. Therefore, Defendants are precluded from relying on these privileges to withhold documents that are otherwise responsive to Plaintiffs' requests. See <u>Third Party Verification, Inc. v. Signaturelink, Inc.,</u> 2007 U.S. Dist. LEXIS 32238, **8-10 (M.D. Fla. 2007).

Moreover, even if Defendants had timely and adequately raised their objections, it is well-settled that retainer agreements, fee agreements and billing documents that do not reveal counsel's mental impressions or opinions are *not*

7

covered by the attorney-client privilege and therefore must be produced. Universal City Development Partners, Ltd. v. Ride & Show Engineering, 230 F.R.D. 688, 691 (M.D. Fla 2005)(citing Finol v. Finol,, 869 So. 2d 666, 666 (Fla. Dist. Ct. App. 2004)). We again note that under the circumstances of this case, and as we have previously advised Defendants' counsel in March, (Pl. Reply, Attach. H), legal opinions and other communications between counsel for the AMO and the AMO fall within the well-settled "fiduciary-benefit" exception to the attorney-client privilege, due to the fiduciary duties that the AMO Officers owe to Plaintiffs' as AMO members. As Plaintiffs are suing to recover illegally expended funds on behalf of *all* AMO members, these communications are producible. See, e.g., Garner v. Wolfinbarger, 430 F.2d 1093, 1101 (5th Cir. 1970); Cox v. Administrator, U.S. Steel, 17 F.3d 1386, 1415-1416 (11th Cir. 1994); Nellis v. ALPA, 144 F.R.D. 68, 71 (Ed. Va. 1992); Washington-Baltimore Newspaper Guild v. Washington Star Co., 543 F.Supp 906, 909 (D.D.C. 1982).

Defendants have likewise not provided Plaintiffs (or the Court) with enough information to assess Defendants' claims of "bargaining strategy" or "organizing strategy" privilege raised in response to AMO Request 1, 34 & 35, or to assess the Defendant's claim of "membership privacy privilege" in response to AMO Request ¶¶3,5,6,8,9, and 11 and individual Defendant/Officer Requests 4 & 5. Plaintiffs' did not serve their document requests with the ultimate goal of "disseminating" confidential information about AMO members, publicizing the Union's bargaining or organizing strategies or publishing any copyrighted training

8

material.[5] Contrary to Defendants' assertions, Plaintiffs have tailored their document requests to root out the extent of the undisputed fiduciary breaches by the Defendants in this case, not to discover the AMO's membership mailing list or membership records. However, because Defendants refuse to particularly describe *what* particular documents exist, and what basic information the documents contain, the Plaintiffs are in no position to consent to this blanket request at this time, especially given that Plaintiffs are undisputedly entitled to view the documents in question.

Finally, Defendants request for a protective order regarding depositions in this case, before any depositions have been taken and in true prior restraint fashion, is without merit and must also be rejected. Defendants' cases, Jennings v. Peters, 162 F.R.D. 120, 121-22 (N.D. Ill. 1995) and Baker v. Buffenbarger, 2004 WL 2124787, * 2-3 (N.D. Ill 2004) involve factual situations entirely different than the ones present here. There, not only had depositions already taken place, but the deposition *answers* questions that the protective order prohibited from being published were beyond the scope of the lawsuits in those cases. Jennings at 121-22; Baker at 4.

Here, Plaintiffs – in their capacity as AMO Union members – are suing the Defendant/Officers to remedy their serious breaches of the fiduciary duties they owed to the *entire* AMO membership (breaches that the Defendants refused to

---

[5] Indeed, while Plaintiffs' counsel has in formed Defense counsel as much (Pl. Resp. Attach. D), Plaintiffs have already agreed to redact AMO members' medical information, as well as their social security numbers and home addresses, in third-party discovery, when the nature of the documents containing such information was explained with enough particularity to permit Plaintiffs to assess the privacy objections raised by the third parties. Exhibit C.

9

remedy themselves, despite being requested to do so) under the LMRDA, as well as their usurpation of the AMO Constitution and, ironically, their unlawful use of the AMO's official website for political purposes. As such, Defendants' request is not only premature, but should be rejected as a transparent attempt to preclude the AMO membership from learning what the LMRDA already entitles them to know.

III.   <u>Defendants' Grand Jury Secrecy Objection Should Also be Rejected</u>

Defendants again advance the argument Plaintiffs areprohibited from accessing any grand jury transcripts or related information. Individual Officer/Defendant Response, ¶7 (incorporating argument from Def's Resp. to Plaintiffs' Motion to Compel). However, consistent with <u>Douglas Oil Co. v. Petrol Stops Northwest</u>, 441 U.S. 211, 222 (1979), Plaintiffs only seek the portions of the transcripts that relate to the allegations this case, and are willing to have Defendants submit the transcripts to the Court *in camera*.

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion should be denied in its entirety, and Plaintiffs should be awarded their fees and costs incurred in opposing this Motion and that the Court provide such other and further relief as deemed warranted by this continued charade.

Dated: November 21, 2007

Respectfully Submitted,

s/Alan M. Grunspan
Fla Bar No: 451150
Carlton Fields, P.A.
4000 International Place
100 S.E. Second Street
Miami, Florida 33131-2114
Telephone (305) 539-7209
Facsimile: (305) 530-0050

William W. Osborne, Jr.
Jason J. Valtos
Osborne Law Offices, P.C.
4301 Connecticut Ave NW
Suite 108
Washington, DC 20008
Telephone: (202) 243-3200
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2007, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

**Via CM/ECF**

D. Marcus Braswell, Jr.
Noah Scott Warman
Sugarman & Susskind, P.A.
100 Miracle Mile, Suite 300
Coral Gables, FL 33134

**Via U.S. Mail**

Joel C. Glanstein
O'Donnell Schwartz Glanstein & Lilly
60 East 42nd Street
Suite 2240
New York, NY 10165

11

Alan M. Grunspan  
Carlton Fields, P.A.  
4000 International Place  
100 S.E. Second Street  
Miami, FL 33131  

David J. Smith  
Carlton Fields, P.A.  
4000 International Place  
100 S.E. Second Street  
Miami, FL 33131  

William W. Osborne, Jr.  
Osborne Law Offices PC  
4301 Connecticut Avenue NW  
Suite 108  
Washington, DC 20008  

Jason J. Valtos  
Osborne Law Offices PC  
4301 Connecticut Avenue NW  
Suite 108  
Washington, DC 20008