UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number:  07-60209-CIV-MARTINEZ-BROWN**

JOHN N. ("JACK") HEARN, CHRISTOPHER
O. BARTLETT, JOHN ROUSSELLE,
TIMOTHY HARKINS, AND HENRY P.
MALLON,

       Plaintiffs,

vs.

MICHAEL MCKAY et. al.,

       Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon the Current Officer Defendants'[1] Motion for

Summary Judgment on Count II of the Complaint (D.E. No. 150).  Plaintiffs filed a Complaint

against Defendants, alleging violations of the Labor Management Reporting and Disclosure Act

("LMRDA"), 29 U.S.C. § 401 *et seq*. and the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185 *et seq*.  The Complaint was originally filed against the American Maritime Officers

Union ("AMO") and a number of current and former officers of the AMO.  Counts I and III

asserted against both the AMO and the individual officers alleged violations of section 101(a)(2)

of the LMRDA, 29 U.S.C. § 411(a)(2) and section 301(a) of the LMRA, 29 U.S.C. § 185(a)

respectively.  These claims in Count I and III, as well as, all claims against Defendants Edward

Kelly and John Hafner were recently dismissed pursuant to the parties' joint stipulation of

_____

[1]This motion was filed by all of the individual defendants except Michael McKay and
Robert McKay.

dismissal.[2]  *See* (D.E. No. 192).  Count II, asserting a violation of section 501(a) of the LMRDA,

29 U.S.C. § 501(a) remains pending against Defendants Michael McKay, Robert McKay,

Thomas Bethel, Donald Nilsson, Paul Cates, Daniel Smith, Donald Cree, Joseph Gremelsbacker,

and Robert Kiefer.  A Clerk's Default for failure to answer or otherwise respond to the Complaint

has been entered against Defendants Michael McKay and Robert McKay, *see* (D.E. Nos. 32, 45),

and Plaintiffs' Motion for Entry of Default Final Judgment as to Michael McKay and Robert

McKay (D.E. No. 142) has been denied without prejudice with leave to refile.  After careful

consideration, the Court grants in part and denies in part Defendants' motion for summary

judgment as to Count II.

## I. Relevant Factual and Procedural Background

Plaintiffs are members of the AMO, which is a maritime labor organization

headquartered in Dania Beach, Florida.  Its members are licensed officers in the United States

merchant marine fleet.  Plaintiffs were all unsuccessful candidates for office in the December 6,

2006 AMO National Officers Election.[3]  The individual Defendants are all either current or

former officers of the AMO.[4] A re-run election was held on June 24, 2008; however, neither

---

[2]By dismissing Counts I and III, no claims remain pending against the American Maritime Officers Union.

[3]Specifically, Plaintiff John N. Hearn ("Hearn") was an unsuccessful candidate for AMO National President, Plaintiff Christopher O. Bartlett ("Bartlett") was an unsuccessful candidate for AMO National Executive Vice President, Plaintiff Tim Harkins ("Harkins") was an unsuccessful candidate for AMO National Vice President, Deep Sea, Plaintiff John Rousselle ("Rouselle") was an unsuccessful candidate for AMO National Assistant Vice President, At Large, and Plaintiff Henry Mallon ("Mallon") was an unsuccessful candidate for AMO National Executive Board Member, Inland Waters.

[4]Defendant, Michael McKay, was the AMO National President from 1994 until January 5, 2007.  He was forced to resign following his felony conviction for violations of the LMRDA

party has informed the Court as to the results of that election.

Plaintiffs allege that in 2000, the United States Department of Justice began a criminal investigation to determine whether certain AMO officers used their position to violate federal law.  In 2005, both Michael McKay and Robert McKay were indicted.  Specifically, they were alleged to have participated in a racketeering conspiracy to enrich themselves and others "through among other things, theft and embezzlement from an ERISA plan, theft and embezzlement from a labor organization, bribery and graft connected to an ERISA plan, mail fraud, and honest services fraud."  (D.E. No. 1, Exh. 2 at 9).

Both Michael McKay and Robert McKay were also charged with mail fraud in violation of 18 U.S.C. § 1341 and failure to maintain records as required by the LMRDA in violation of 29 U.S.C. §§ 436 and 439(a).  Michael McKay was also charged with theft or embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664 and falsification of required records and certified information pertaining to an employee benefit plan in violation of 18 U.S.C. § 1027.  In addition, Robert McKay was charged with embezzlement from a labor organization in violation

---

and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in *United States v. Michael McKay*, *et al.,* case number 06-60149-CR-COHN.  Defendant Robert McKay was the AMO Secretary Treasurer from 1994 until he was defeated in the December 6, 2006 election. Defendant Thomas J. Bethel ("Bethel") was previously the AMO Executive Vice President and on December 6, 2006, he was a successful candidate for election to the position of AMO National Executive Vice President.  He later became the acting AMO National President.

The remaining Defendants are all former members of Michael McKay's administration who also hold current positions in the AMO.  Defendant Donald Nilsson ("Nilsson"), and Defendant Paul Cates ("Cates") are members of the AMO National Executive Committee. Defendant, Daniel Smith, ("Smith") is an AMO National Vice President.  Defendant, Donald Cree, ("Cree") is the AMO National Assistant Vice President, Great Lakes.  Defendant, Robert Kiefer, ("Kiefer") is the AMO National Assistant Vice President, At Large.  Defendant, Joseph Gremelsbacker, ("Gremelsbacker") is the National Vice President, Deep Sea.

of 29 U.S.C. § 501(c) and false entry in records required by the LMRDA in violation of 29

U.S.C. §§ 436 and 439(c).  Despite these charges, both Michael McKay and Robert McKay were

permitted to retain their positions in the AMO.  Michael McKay and Robert McKay were also

both nominated for and campaigned for reelection in the December 2006 election.

The AMO election ballots were counted on December 6, 2006.  Defendant Michael

McKay defeated Plaintiff Hearn for the office of AMO National President.  Defendant Robert

McKay was defeated in his attempt to win reelection to the office of AMO National Secretary-

Treasurer.  Plaintiff Bartlett was defeated by Defendant Bethel for the position of Vice President.

Plaintiff  Harkins was defeated by Defendant Gremelsbacker for National Vice President, Deep

Sea.  Plaintiff Mallon was defeated by Defendant Hafner for a position on the National Executive

Board, Inland Waters and Plaintiff Rousselle was defeated by Defendant Kiefer for the office of

National Assistant Vice President, At Large.

On January 5, 2007, Defendants Michael McKay and Robert McKay were found guilty of

committing a RICO conspiracy, mail fraud, and failing to maintain records required by the

LMRDA.  (D.E. No. 1, Exh. 6).  Defendant Michael McKay was also found guilty of falsifying a

required record and certified information pertaining to an employee benefit plan.  *Id*.  In addition,

Defendant Robert McKay was found guilty of committing theft or embezzlement from a labor

organization and of making a false entry in records required by the LMRDA.  *Id*.  Because of his

conviction, Michael McKay was no longer able to serve as AMO National President, and on

January 8, 2007, pursuant to a newly enacted amendment to the AMO Constitution, Resolution 3,

the AMO National Executive Committee voted and appointed Defendant Bethel as AMO

National President.

On February 16, 2007, Plaintiffs filed this case.  Plaintiffs also filed an Application for Leave of Court to Sue Pursuant to 29 U.S.C. § 501(b) which this Court granted.  *See* (D.E. No. 40).  Defendants then filed motions to dismiss Plaintiffs' Complaint.  These motions were granted in part and denied in part.  The motions were granted in that the portion of Count I which alleged a violation of 29 U.S.C. § 481(c) was dismissed without prejudice.  The motions were denied in all other respects.  Defendants then filed their Answer and Cross Claim.[5]

The claims in Counts I and III have been dismissed and only Count II remains pending. The Court now considers the pending motion for summary judgment as it relates to Defendants Bethel, Nilsson, Cates, Smith, Cree, Gremelsbacker, and Keifer, the remaining Defendants who filed this motion.

## II.  Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  An issue of fact is "genuine" if the record

_____

[5]Defendants' Cross Claim is asserted against Defendants Michael McKay and Robert McKay and argues that "the Court should find any damages or any other relief in this matter are attributable solely and exclusively to the Co-defendants Michael R. McKay and Robert McKay, and the Court should enter judgments for damages, if any, . . . solely and exclusively . . . against these co-defendants." (D.E. No. 62 at 12).

taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324.

Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)).   A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

### III. Analysis

In their motion, the individual Defendants, excepting Michael McKay and Robert McKay, seek summary judgment on Count II.  In Count II, Plaintiffs allege a violation of Defendants' fiduciary duties under section 501(a) of the LMRDA, 29 U.S.C. § 501(a).  Plaintiffs allege that based on his criminal conviction, Michael McKay breached his fiduciary duty to the AMO by committing numerous acts of bribery and embezzlement from the union and union benefit plans, by knowingly filing a false Form LM-2 Report[6] and Form 5500 Report[7] with the United States Department of Labor, and by unlawfully tampering with the 1996 and 1999 AMO National Officer Elections.  (D.E. No. 1 at 23-24).  Plaintiffs also allege that based on his criminal conviction, Robert McKay breached his fiduciary duty to the AMO in the same ways as alleged against Michael McKay and also that he misused the union benefit plan assets for personal benefit.  In addition, Plaintiffs allege that the other individual Defendants, former members of the McKay administration, breached their fiduciary duties under the LMRDA by

---

[6]An LM-2 Report is an annual financial statement filed by the union as required by the LMRDA.  *See* 29 U.S.C. § 431(b).

[7]A Form 5500 is an annual report on employee benefit plans filed as required by the Employment Retirement Income Security Act.  *See* 29 U.S.C. §1023.

"knowingly aiding, abetting and failing to remedy the continuing unlawful actions of Defendants Michael McKay and Robert McKay."  (D.E. No. 1 at 24).

Defendants seek summary judgment on Count II, arguing that Defendants cannot be held liable for the McKays' misuse of assets of jointly administered funds as a matter of law and that there is no evidence to support Plaintiffs' allegations that the individual Defendants "aided or abetted or otherwise breached their fiduciary duty in connection with the McKays' activities or otherwise."  (D.E. No. 152 at 3).  Finally, Defendants also argue that Plaintiffs' claims are barred by the doctrine of laches.  After careful consideration, the Court grants the Defendants' motion for summary judgment in part and denies it in part.

### A.    Misuse of Jointly Administered Funds

First, Defendants seek summary judgment on the claims in Count II relating to the misuse of jointly administered funds arguing that such a claim may not be brought as a matter of law.  In this case, Plaintiffs have alleged that Defendants aided and abetted the McKays in misusing the assets of the Safety and Education Plan and the Vacation Plan to purchase hockey tickets, cigars, china, silver, glassware, and lodging facilities for the union and certain union employees.  The Safety and Education Plan and the Vacation Plan are funds, which were jointly established by the AMO and employers, and are funded by contributions from the employers.  These plans are governed by trust agreements, which are jointly administered by a board of trustees composed of members appointed by the union and members appointed by the employers.  Defendants argue that section 501(a) claims may only relate to the misuse of union funds and that the funds in these jointly administered plans are not union funds.  This Court agrees.

Section 501(a) sets forth the fiduciary responsibilities of the officers of a labor

organization.[8]  It provides that labor union officers have a fiduciary duty to the labor organization

and its "members as a group." It specifically provides that labor union officers have a duty to

properly hold, manage, invest, and expend the labor organization's "money and property."  29

U.S.C. § 501(a).

It is undisputed that the Safety and Education Plan and the Vacation Plan are jointly

administered employee benefit trust funds.  *See* (D.E. No. 153 at ¶¶ 21-22); (D.E. No. 164 ¶ at 3).

*See also* (D.E. No. 153, Exh. 3 at 87-88); (D.E. No. 153, Exh. 13).  It is also undisputed that the

Agreements and Declarations of Trust establishing both of these plans state that the union does

not "have any right, title or interest in or to the Fund, or any part thereof."  (D.E. No. 153, Exh.

13 at 12, 24).  Once funds are transferred into these plans they are part of an "irrevocable trust"

and "assets of the Plan."  *Id*.

Thus, the funds in these plans are not union money or property but rather the property of

---

[8]Section 501(a) states:
The officers, agents, shop stewards, and other representatives of a labor
organization occupy positions of trust in relation to such organization and its
members as a group. It is, therefore, the duty of each such person, taking into
account the special problems and functions of a labor organization, to hold its
money and property solely for the benefit of the organization and its members and
to manage, invest, and expend the same in accordance with its constitution and
bylaws and any resolutions of the governing bodies adopted thereunder, to refrain
from dealing with such organization as an adverse party or in behalf of an adverse
party in any matter connected with his duties and from holding or acquiring any
pecuniary or personal interest which conflicts with the interests of such
organization, and to account to the organization for any profit received by him in
whatever capacity in connection with transactions conducted by him or under his
direction on behalf of the organization. A general exculpatory provision in the
constitution and bylaws of such a labor organization or a general exculpatory
resolution of a governing body purporting to relieve any such person of liability
for breach of the duties declared by this section shall be void as against public
policy.
29 U.S.C. § 501(a).

the plans or trusts, and the trustees of these trusts are subject to their own fiduciary requirements under the Employment Retirement Income Security Act of 1974 ("ERISA").  For example, in *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 334 (1981) the Supreme Court stated that "[t]he language and legislative history of § 302(c)(5) and ERISA . . .demonstrate that an employee benefit fund trustee is a fiduciary whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him."  *See also Plumbers & Steamfitters Local No. 150 Pension Fund v. Vestex Costr. Co.*, 932 F. 2d 1443, 1451 (11th Cir. 1991) (recognizing the independent nature of "trusts, employers, and unions" and discussing a trustee's fiduciary duty under ERISA to act solely for the benefit of participants and beneficiaries).  Thus, by allegedly misusing the funds of these trusts, at times it appears for the benefit of the union, Defendants would have breached their duty to the trusts under ERISA, not their duty to the union under section 501.  Therefore, section 501 does not apply to Plaintiffs' claims relating to the mismanagement of the assets of these trusts.  *See Livingston v. Mazzola*, No. C90-1813, 1991 U.S. Dist. LEXIS 8326, at **3-4 (N.D. Cal. June 4, 1991) (stating that "[t]o state a claim" under section 501 "it is essential that the breach of duty relate to the *union's* 'money or property'" and finding that plaintiff's claims relating to a pension fund were not properly brought under section 501 as this fund was not union property but rather "a jointly administered employee benefit trust fund governed by the fiduciary standards of" ERISA); *Yager v. Carey*, 910 F. Supp. 704, 728 (D.D.C. 1995) (finding that section 501 only applies to activities affecting union funds and thus, plaintiffs had no standing to raise a section 501 claim relating to the administration of a pension plan, the funds of which were the property of the Teamster Affiliates Pension Plan once the money was transferred into the plan).

Plaintiffs have argued that "prevailing precedents" demonstrate that union officers such as Defendants may be held liable for misconduct "visited upon union benefit plans under . . . [section] 501(a), where, as here, they serve simultaneously as both officers of the union and union-designated trustees to the union benefit plans."  However, the Court finds the three cases cited by Plaintiffs as persuasive authority are distinguishable.

First, Plaintiffs cite *Morrisey v. Curran* where the Court stated in a cursory fashion that pursuant to its previous decision *Tucker v. Shaw*, 378 F. 2d 304 (2d Cir. 1967), the trustees of an officers' pension plan were in a "position of trust and responsibility in relation to the monies charged to have been unlawfully expended and all had a duty to see that it was restored to the Union." 423 F. 2d 393, 399-400 (2d Cir. 1970).  However, after reviewing *Tucker*, the case upon which *Morrisey* relies, this Court finds that the *Tucker* Court did not truly reach this issue. Rather, the court in *Tucker* found that in considering whether a district court properly disqualified a local union's regularly retained counsel that it was not necessary to deal with the issue of whether section 501(a) applies to a trustee of a welfare trust fund any further.  The court only noted that the appellants misrepresented the holding of a case they cited in support of this argument and said no more on the issue.  *Tucker*, 378 F. 2d at 307.  Thus, the Court finds that it cannot rely on *Morrisey*.

Next, Plaintiffs cite *Hood v. Journeymen Barbers Union* in which the Court applied section 501 to "union-appointed members of a pension fund committee."  454 F. 2d 1347, 1351-54 (7th Cir. 1972).  The *Hood* Court found the language of section 501 somewhat ambiguous on this issue but noted:

Faced with what is at most a statutory ambiguity, we will be guided by the purpose of

Section 501.  The Section, as we see it, was a direct and far-reaching response to . . . the misuse of union funds and property by union officials in its every manifestation.  Thus the reach of Section 501 extends to every area in which subversion of the interest of the union membership may be accomplished by union officials or representatives bent on acting in culpable derogation of those interests.

*Id*. at 1354.  The Court finds this case distinguishable.

First, *Hood* applied to a trust that was "an exclusively union undertaking," unlike the trusts at issue here, which are jointly administered.  Moreover, as discussed above, this Court finds that the plain language of section 501 does not provide for claims that do not involve union money or property.  *Hood*, like the decisions discussed above, was decided before the passage of ERISA and "ERISA obviated the need for federal courts to strain to imply a cause of action in favor of employee benefit fund participants and beneficiaries."  *Brink v. DaLesio*, 496 F. Supp. 1350, 1374 (D. Md. 1980) *rev'd on other grounds by Brink v. DaLesio*, 667 F. 2d 420 (4th Cir. 1981).

Finally, Plaintiffs rely on *Brink v. DaLesio*, 667 F. 2d 420 (4th Cir. 1981), which they cite in reference to its discussion of a severance fund.  The severance fund at issue was established by Teamsters Local 311 to provide compensation to Leo DaLesio, the principal officer of Teamsters Local 311, whenever he ceased employment as the union's Secretary-Treasurer.  Plaintiffs, two labor union members, contended that DaLesio violated section 501 in promoting the establishing of this fund and in later attaining increases in union contributions to this fund.  The district court found that DaLesio did not violate his fiduciary duty in the establishment of this trust but that he did violate his fiduciary duty by obtaining the later increases because "he secured the approval of such increases without making adequate disclosures to the union's Executive Board."  *Id*. at 424.  The *Brink* Court discussed the district court's findings and then affirmed its decision.  *Id*. at 425.

-12-

Thus, this case does not support Plaintiff's position and does not even involve a court's consideration of section 501's application to a trustee of an employee benefit fund.  It is unclear why Plaintiffs have relied on this decision for support.  Thus, the Court grants Defendants' motion for summary judgment on the issue of the misuse of the jointly administered employee benefit plans.[9]

### B.   Evidence that Defendants Aided and Abetted McKays

Next, Defendants seek summary judgment on Count II, arguing that there is no evidence that the Defendants breached their fiduciary duties by aided and abetting the McKays in their misconduct. Specifically, Defendants argue that there are no genuine issues of material fact with regard to the AMO's reimbursement of the Safety and Education Plan, the improper payment of bonuses, the rigging of elections, and the failure to file accurate LM-2 Reports with the Department of Labor.  After careful consideration, the Court finds that summary judgment is appropriate on some of these claims and inappropriate on others.

In considering a section 501 claim, the Eleventh Circuit has stated that the Court's review of these claims is limited and that courts should not "interfere broadly in internal union affairs." *Council 49, Am. Fed'n of State, County, and Mun. Employees Union AFL-CIO v. Reach*, 843 F. 2d 1343, 1347 (11th Cir. 1988).  "Section 501 is not an invitation for courts to substitute their judgment on how a union should be managed for that of the union officers."  *Id*.  Thus, the

---

[9] To the extent Plaintiffs are arguing that Defendants breached their fiduciary duties by reimbursing these jointly administered plans with union funds, the Court also grants summary judgment on these claims but for the reasons set forth below.  In addition, the Court finds it unnecessary to discuss Defendants' argument that they are entitled to summary judgment on the issue of the misuse of the jointly administered funds because there is no evidence they aided and abetted the McKays as the Court has granted summary judgment as a matter of law on this issue.

Eleventh Circuit has stated that "where decisions regarding the use of union funds have been authorized in accordance with the union's constitution, by-laws, or other applicable governing provisions, 'a court will typically not have cause to review the reasonableness of the [decision].'" *Id.* (quoting *Ray v. Young*, 753 F. 2d 386, 390 (5th Cir. 1986)).

"Authorization, however, is not a complete defense to an accusation of breach of fiduciary duty under section 501." *Id.* As section 501 was adopted primarily in reaction to corruption among union officials, "[w]here a union officer personally benefits from union funds, a court in a section 501 suit may determine whether the expenditure of funds, notwithstading its authorization is so manifestly unreasonable as to evidence a breach of fiduciary duty." *Id.* Thus, in situations where an expenditure of union funds is unauthorized or where a union official has directly benefitted, judicial deference is not required and "courts are free to determine whether an expenditure was so unreasonable as to constitute a breach of fiduciary duty under section 501." *Id.*

First, Defendants argue that there is no evidence to support Plaintiffs' claim that the reimbursement of the Safety and Education Plan was a violation of section 501. This reimbursement occurred after an internal investigation of both the union and the plan. The investigation revealed that lodging facilities owned by the plan had at times been used by the union or individuals affiliated with the union without payment. The union entered into a settlement agreement with the plan and paid it $183,000. Plaintiffs argue that this reimbursement was improper because the union itself reimbursed the Safety and Education Plan and not the individual officers or employees who actually used the lodging facilities. The Court finds that there are no genuine issues of material fact regarding this issue.

-14-

Defendant Thomas Bethel states in his deposition that the "stays were for business and some of them were for trustee[s], and some were executive board meetings, some were personal stays."  (D.E. No. 153, Exh. 13 at 43). Bethel states that the personal stays were "billed separately and reimbursed."  *Id*. at 191.  Bethel also states that $183,000 which was reimbursed to the Safety and Education Plan paid for the lodging of "people that stayed there . . . [as] invited guests of the union either as a condition of their employment or what we felt was to the benefit of [the] union and its membership and we did not feel it was in the best interests of our union membership to bill those people so we pick up the bill."  *Id*. at 48.  Bethel testified that this $183,000 "represents exactly what the union would have paid for all of the stays had they been properly billed by the plans.  The union did not lose a dollar."  *Id*. at 191.  Plaintiffs have produced no evidence to dispute these statements made by Bethel or to create a genuine issue of material fact as to whether the amount that was reimbursed was proper.

In response to Defendants' argument on this issue, Plaintiffs directed this Court's attention to the minutes of a board meeting where the board declined to further investigate the lodging issue and the settlement agreement between the plan and the union. *See* (D.E. No. 164), Exhs. J and L).  However, neither of these documents creates even a genuine dispute of fact as there is no evidence that further investigation was warranted or that it was improper for Defendants to decide in their discretion to have the union pay for the lodging for certain employees or invited guests.  Here, Plaintiffs have not even submitted any evidence that any of the stays that were paid for were those of Union officers or that these officers in any way directly

benefitted from this reimbursement.[10]

On this issue, Defendants were not required to support their motion for summary judgment with affidavits. *See Celotex*, 477 U.S. at 323. As they will not bear the burden of proof on this issue at trial, Defendants were merely required to show an absence of evidence to support Plaintiffs' claim which they have clearly done by presenting Bethel's testimony. *Id.* at 324. Plaintiffs then had the burden to go beyond the pleadings and present their own evidence. *Id.* Plaintiffs have not met their burden, and summary judgment on this issue is appropriate.

Next, Defendants argue that there is no evidence to support Plaintiffs' claim that year-end bonuses in 1998 and 1999 were granted in violation of section 501. Plaintiffs argue that these bonuses were improperly granted as a reimbursement to certain employees who made political contributions. Defendants maintain that theses bonuses were merit-based and properly awarded at the union's discretion. *See* (D.E. No. 153, Exh. 17). The Court finds that there are genuine issues of material fact as to whether the year-end bonuses granted in 1998 and 1999 were granted in violation of section 501.

There is evidence in the record that these year-end bonuses were granted as a reimbursement to certain members for campaign contributions. Plaintiffs have provided the testimony of Jerome Joseph, the former Executive Vice President, who was present at a meeting on November 9, 1998 where these bonuses were discussed. Joseph testified that "[i]f you attended that meeting, that executive board meeting held on November 9th, you would have to be asleep during the meeting not to know that [the bonuseses were] a reimbursement" for political

---

[10]In fact, Bethel states that he personally reimbursed the union for a personal stay at the lodging in question and thus, this amount was not included in the $183,000. (D.E. No. 153, Exh. 12 at 47, 195).

contributions.  (D.E. No. 164, Exh. J at 26).  Joseph testified that he in fact made a political

contribution in 1998 to Congressman Bud Shuster and then received one of these reimbursement

bonuses.  *Id*. at 25-26  He also noted that he received another of these bonuses in 1999 after

making another political contribution to Congressman Bud Shuster.  *Id*. at 27-29.

The minutes from this meeting and Jerome Joseph's testimony indicates that individual

Defendants Bethel, Nilsson, Smith, Cree, Gremelsbacker, and Keifer were all present at the

November 9, 1988 meeting and that they approved these bonuses.[11]  *See* (D.E. No. 164, Exh. J).

*See also* (D.E. No. 153, Exh. 14).  The record also indicates that a number of union officers

received these bonuses.  *See* (D.E. No. 153, Exh. 15).

This evidence is sufficient to defeat summary judgment on the issue of whether the

issuance of these bonuses violated section 501 as to all Defendants except Paul Cates.  This

evidence creates a genuine issue of material fact as to whether the conferral of bonuses was

manifestly unreasonable as these bonuses conferred a direct benefit on union officers.  *See*

*Reach*, 843 F. 2d at 1348 n. 4 (noting that the district court properly held board members jointly

and severally liable for knowingly permitting the Executive Director to benefit from union

funds).

In addition, it also creates a genuine issue of fact as to whether the conferral of the

bonuses was authorized in accordance with the union constitution based on Joseph's testimony

that the bonuses were awarded to reimburse members for political contributions to a

Congressman.  The conferral of these bonuses could easily be viewed as unlawful backdoor

political contributions. *See* 2 U.S.C. § 441b(a) (stating that "[i]t is unlawful for . . . any labor

---

[11]Defaulting Defendants Michael and Robert McKay were also present at this meeting.

organization to make a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to, Congress are to be voted for, . . . or any labor organization to consent to any contribution or expenditure by the . . . labor organization . . . prohibited by this section."). While Michael McKay had the discretion to award bonuses and the board to approve them under the AMO Constitution, this discretion granted by the constitution had to be applied "in accordance with all applicable laws." (D.E. No. 1, Exh. 1, AMO National Constitution Art. XXVII). Thus, the Court finds there are genuine issues of material fact with regard to this issue as to all of the moving Defendants with the exception of Paul Cates. Summary Judgment is granted on this issue as to Defendant Paul Cates as there is no evidence he ever approved these bonuses and more importantly, it is undisputed that in the time period that these bonuses were issued he was not an AMO officer. *See* (D.E. No. 153, Exh. 6).

Defendants also argue there is no evidence to support Plaintiffs' claim that they breached their fiduciary duties under section 501 by participating in the rigging of elections in 1993 and 1996. Defendants also argue that summary judgment should be granted on this claim because this claim is more properly brought under section 401 of the LMRDA. The Court finds the claim under section 501 to be proper and finds that summary judgment is inappropriate as to Defendants Bethel and Gremelsbacker; however, there remain no issues of fact regarding the other Defendants seeking summary judgment.

While claims relating to elections are generally brought under section 401 of the LMRDA, *see Cefalo v. Moffett*, 449 F. 2d 1193, 1200 (D.C. Cir. 1971), claims under section 501 are not prohibited especially where as in this case, Plaintiffs are not attempting to set aside an

election.  *See Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 541 n.16 (1984).[12]  In addition, the Court finds there are genuine issues of material fact as to Gremelsbacker and Bethel's participation in aiding and abetting the election.  Plaintiffs have submitted excerpts from the deposition testimony of Thomas Kelly in which he states that Defendants Bethel and Gremelsbacker knew about the rigging of the elections.  *See* (D.E. No. 164, Exh. M at 73-74).  This testimony is sufficient to defeat summary judgment as to these two Defendants.[13]  Plaintiffs, however, have offered no other evidence that any of the other Defendants either participated in or even knew about the rigging of these elections. Thus, as Plaintiffs have failed to carry their burden as to these claims, the Court grants summary judgment as to the claims involving the rigging of the 1993 and 1996 elections as they relate to Defendants Nilsson, Cates, Smith, Cree, and Keifer.

Defendants next argue that there is no evidence to support Plaintiffs' claim that they breached their fiduciary duties under section 501 by failing to file accurate LM-2 reports. Defendants have submitted excerpts from the deposition of Thomas Kelly in which he states that as an AMO officer he had no responsibilities with respect to the preparation or filing of LM-2 reports.  (D.E. No. 153, Exh. 3 at 108). He also testified that it was a fair assumption that no one else at his level or below would have any responsibility for the LM-2 report.  *Id*. at 109. Plaintiffs have not responded to this claim or this evidence.  They have not offered any evidence

---

[12]The Eleventh Circuit has stated that a union official's duty to its union should be interpreted broadly and is not confined to a union official's financial dealings.  *See United States v. Browne*, 505 F. 3d 1229, 1266 (11th Cir. 2007).

[13]Defendants have argued that Kelly's testimony is not credible.  However, this is an issue for the fact-finder at trial.

at all that Defendants either participated in the preparation of these inaccurate reports or that they had knowledge that the reports were inaccurate.  Therefore, as Plaintiffs have not met their burden, this Court grants summary judgment as to all of the moving Defendants on this claim.  See *Celotex*, 477 U.S. at 324.

### C.    Laches

Finally, Defendants argue that Plaintiffs' claims in Count II are barred by the doctrine of laches.  Plaintiffs argue that this affirmative defense has been waived as it was not asserted in Defendants' answer and that a determination of whether the doctrine of laches is too fact-intensive to be appropriate for summary judgment.  After careful consideration, this Court finds that although the defense of laches has not been waived and it is not per se inappropriate to grant summary judgment based on a claim of laches, there remain genuine issues of material fact as to Defendants' assertion that laches bars Plaintiffs' claims.

First, the Court finds that the defense of laches has not been waived and may be asserted. Federal Rule of Civil Procedure 8(c) provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . laches."[14]  Moreover, "the general rule is that, when a party fails to raise an affirmative defense in the pleadings, that party waives its right to raise the issue at trial."  *Hassan v. United States Postal Service*, 842 F. 2d 260, 263 (11th Cir. 1988).  However, given the liberal pleading rules in the Federal Rules of Civil Procedure, the Eleventh Circuit has stated "[w]e must avoid hypertechnicality in pleading

---

[14]The Court notes that the actual text of Rule 8(c) in effect at the time this action was filed and at the time responsive pleadings were due read somewhat differently; however, the rule had the same meaning and the amendments to Rule 8 effective December 1, 2007 were merely stylistic.  *See* Fed. R. Civ. 8(c) (Advisory Committee Notes, 2007 Amendment).

requirements and focus, instead on enforcing the actual purpose of the rule." *Id*.

The purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and "a chance to argue . . . why the imposition . . . [of the defense] would be inappropriate." *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971). Notice of the defense alleviates any possible prejudice and where there is no prejudice, the Court may consider the defense. *Hassan*, 842 F. 2d at 263. Here, it is undisputed that Plaintiffs had notice of this defense. Defendants gave Plaintiffs very specific notice of their defense of laches at the deposition of John Hearn on February 14, 2008.[15] At this deposition, counsel for Defendants stated:

> I just want to make sure that there is no surprise. So you're clearly now on notice that one of the defenses we intend to rely on in this case is the laches defense. I know there have been references to limitations and other issues previously in this case, but I just want to make that absolutely clear on the record today.

(D.E. No. 172, Exh. 3 at 323). The Court finds this gave Plaintiffs sufficient notice of Defendants' affirmative defense of laches. *See Hassan*, 842 F. 2d at 263-64 (where the Court found that the plaintiff had received sufficient notice of an affirmative defense where Plaintiff was questioned about it at her deposition and the defense was asked about it in an earlier interrogatory).

The Court, however, finds that summary judgment is inappropriate on Count II based on the doctrine of laches. This doctrine is an affirmative defense which requires a defendant to prove three elements: "(1) a delay in a right or claim; (2) that the delay was not excusable; and (3) that the delay caused defendant undue prejudice." *Conagra, Inc. v. Singleton*, 743 F. 2d

---

[15]Discovery in this case closed over three weeks later on March 7, 2008. *See* (D.E. No. 106).

1508, 1517 (11th Cir. 1984).  *See also Am. United Life Ins. Co. v. Am. United Ins. Co.*, 731 F.

Supp. 480, 487 (S.D. Fla. 1990).  As Defendants will bear the burden of proof on these elements

at trial, they must demonstrate each of these elements in their motion for summary judgment and

support each element with "'credible evidence . . . that would entitle . . . [them] to a directed

verdict if not controverted at trial.'" *Four Parcels of Real Prop. In Greene and Tuscaloosa

Counties*, 941 F. 2d at 1438 (quoting *Celotex*, 477 U.S. at 331) (Brennan, J., dissenting)).

Defendants have not met their burden.

At this time, it is unclear when the activities complained of in Count II actually began,

when the activities ended, and more importantly when Plaintiffs either had actual knowledge or

should have had knowledge of the facts giving rise to their claims in Count II.[16]  Defendants have

offered evidence that at least one plaintiff, Hearn, had a suspicion that Michael McKay and

unspecified "others in his administration" might have violated their fiduciary duties in 2000

when the membership learned of an investigation.  *See* (D.E. No. 153, Exh. 31 at 175-76).

However, it is unclear whether this suspicion was enough for this Court to have required Hearn

to have acted earlier.  *See Rockwell Int'l Corp. v. SDL, Inc.*, 103 F. Supp. 2d 1192, 1197

(N.D.Cal. 2000) (stating when considering a laches defense that in order for it to apply a plaintiff

must have had "more than a mere suspicion but less than absolute assurance" of the alleged

---

[16]Defendants have argued that in applying the doctrine of laches the Court should apply
the most analogous state statute, which Defendants argue is four years.  However, the Eleventh
Circuit has specifically rejected this approach when considering a laches defense in reference to a
section 501 claim seeking an accounting.  *See Erkins v. Bryan*, 785 F. 2d 1538, 1544 (11th Cir.
1986) (considering a section 501 claim for an accounting and the application of the doctrine of
laches and stating that "[p]olicies underlying the creation of federal equitable claims are not well
served by applying rigid limitations; therefore, federal courts considering federal equitable claims
should rely on equitable principles.")  Here, Plaintiffs seek only an accounting as it relates to the
individual Defendants moving for summary judgment.

misconduct).

Defendants have also argued that LM-2 reports submitted to the Department of Labor were sufficient to put Plaintiffs on notice of Defendants' alleged wrongdoing; however, these reports only vaguely state that the AMO had received information "concerning alleged breaches of fiduciary duties and prohibited transactions." *See* (D.E. No. 153, Exh. 21 at A-008); (D.E. No. 153, Exh. 22 at A-011). Thus, the Court finds that these reports cannot in and of themselves be relied upon to establish Plaintiffs' undue delay.

In addition, Defendants have offered no specific evidence of any prejudice they have suffered because of the alleged delay in the filing of this action. The bulk of the evidence cited by Defendants to show that they have been prejudiced relates to loans the AMO made to an affiliate union, District 2A of the AMO. However, these claims are not a part of this action as Plaintiffs' motion to amend the complaint was denied. *See* (D.E. Nos. 158, 170). Defendants have also made conclusory allegations that they have been prejudiced because memories have faded and certain persons have died. Defendants, however, have not demonstrated how the alleged delay in this case has prejudiced them in some specific, material way and inhibited their ability to defend against these claims.[17] Thus, the Court declines to grant summary judgment on Defendants' affirmative defense of laches. Therefore it is hereby:

**ORDERED and ADJUDGED** that

Current Officer Defendants' Motion for Summary Judgment on Count II of the Complaint

---

[17]In their motion, Defendants argue that they are prejudiced because Michael McKay and Robert McKay are in prison. However, this does not support Defendants' arguments as Defendants could have sought the Court's aid in deposing these incarcerated individuals or in obtaining their presence at trial.

**(D.E. No. 150)** is **GRANTED in part** and **DENIED in part**.  Summary Judgment is granted:

    a.    on Plaintiff's claims in Count II against Defendants Bethel, Nilsson, Cates, Smith, Cree, Gremelsbacker and Keifer relating to the misuse of the jointly administered funds;

    b.    on Plaintiff's claims in Count II against Defendants Bethel, Nilsson, Cates, Smith, Cree, Gremelsbacker and Keifer relating to the reimbursement of the Safety and Education Plan;

    c.    on Plaintiff's claims in Count II against Defendant Paul Cates as to the issuance of year-end bonuses in 1998 and 1999;

    d.    on Plaintiff's claims in Count II against Defendants Nilsson, Cates, Smith, Cree, and Keifer as to the rigging of the 1993 and 1996 elections; and

    e.    on Plaintiff's claims in Count II against Defendants Bethel, Nilsson, Cates, Smith, Cree, Gremelsbacker and Keifer as to the failure to file sufficient LM-2 Reports.

Summary judgment is denied in all other respects.  A final judgment as to the portions of Count II upon which summary judgment has been awarded shall be entered separately.

    DONE AND ORDERED in Chambers at Miami, Florida, this 1 day of July, 2008.

                                    _____

                                    JOSE E. MARTINEZ
                                    UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record